**Jeffrey M. ROBBINS, et al., Plaintiff,**

v.

**TRIDENT MARINE CORP., et al., Defendant.**

No. C83–747.

United States District Court, N.D. Ohio, E.D.

Feb. 5, 1985.

Paul Kaufman, Cleveland, Ohio, for plaintiff.

Jeffrey Fincun, Cleveland, Ohio, for defendant Douglas Tonia.

Ronald Isroff, Cleveland, Ohio, for defendants Sunup Corp. and Harold Richie.

Edward Cass and James Speros, Cleveland, Ohio, for Trident Marine Corp.

ORDER

BELL, District Judge.

STATEMENT OF THE CASE

This action was filed on February 18, 1983 by plaintiffs Jeffery and Barbara Robbins against Trident Marine Corp., Sunup, Inc., Harold Richey and Douglas Tonia. Thereafter, Wayne Bratton was added as a party defendant. Jurisdiction of this court was properly invoked pursuant to 28 U.S.C. § 1333, under the general admiralty and maritime jurisdiction.

In brief, the plaintiffs allege that while a passenger on a pleasure boat owned by one of the defendants, Jeffery Robbins was injured as a result of an accident involving the boats owned and operated by the defendants. It is further alleged that as a

proximate result of the defendants' actions, Jeffery Robbins has suffered various damages for his personal injury. The claims of Barbara Robbins involve her alleged loss of consortium.

Prior to trial the defendant, Douglas Tonia, settled with the plaintiffs and the remaining defendants. The remaining defendants have denied liability for the injuries to Jeffery Robbins.

On October 2, 1984, trial was commenced on these contentions and continued for three days. Thereafter, the parties conducted and submitted the deposition of expert witnesses to supplement the record. On November 15, 1984, the parties argued this matter to the court. Based upon the testimony and exhibits adduced by the parties and the applicable law, the court now enters its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The plaintiff, Jeffery Robbins is a licensed podiatrist who practices and teaches podiatry in the Greater Cleveland, Ohio area. In August of 1982, Robbins was working in his private practice eighteen to twenty-five hours a week. In addition to his private practice, Robbins was employed as a teacher at the Ohio College of Podiatric Medicine.

On the evening of August 7, 1982, Robbins and his wife Barbara were passengers on the charter ship, the WAN–EL. At that time the WAN–EL was being operated by the defendant Sun-Up, Inc. The plaintiffs had chartered the boat for the evening and were hosting a party for approximately twenty-five members of a social club.

After the club members and the plaintiffs boarded the WAN–EL, the boat proceeded to move up the Cuyahoga River until it reached the end of navigable waters on the river. At this point, the WAN–EL turned around and proceeded down the river and towards Lake Erie. On the trip down the river the WAN–EL had to stop and wait between twenty to thirty minutes

for a draw bridge to be raised at the Conrail No. 1 bridge.

The captain of the WAN–EL on August 7, 1982 was Captain Harold Richey. While waiting for the Conrail bridge to be raised, Richey noticed the presence of the charter vessel HOLIDAY, directly ahead of the WAN–EL and also waiting to proceed down the Cuyahoga River. In addition to the two charter boats the river was quite crowded with smaller pleasure boats.

At approximately 11:00 P.M., the Conrail bridge was raised and the boats started to move up the river. At this time the HOLIDAY, piloted by its captain, Wayne Bratton, was in front of the WAN–EL and would pass the bridge first. The HOLIDAY had also been chartered for the evening by a private party and had approximately sixty people aboard.

When the HOLIDAY proceeded up river it gave the appropriate signals to the other boats on the river. At this time the HOLIDAY was moving at 3 miles/hour. The WAN–EL was less than 100 feet behind and was proceeding at the same speed.

While the two charter boats were moving up river, a small pleasure craft operated by Douglas Tonia had moved through the Conrail bridge and was moving up river. At this point, the Tonia vessel, without warning, changed directions and started to cross the bow of the HOLIDAY at a high rate of speed and appeared to be on a collision course with that boat. Immediately, Captain Bratton stopped his boat and give a danger signal of at least five short blasts of the ship's whistle in order to warn the Tonia boat and other boats on the river. This signal was heard by Captain Richey on the WAN–EL, and he took his boat out of forward gear and left it in neutral. Captain Richey knew that the danger signal had come from the HOLIDAY, but he was not aware of what the specific danger actually was.

The Tonia boat did not heed the warning signals given by the HOLIDAY and continued to proceed on a collision course with the HOLIDAY. Captain Bratton then placed his boat into reverse in order to

avoid a possible serious collision with the Tonia boat. Because of Bratton's actions a collision was narrowly avoided. The Tonia boat proceeded in its course towards the shore and docked at a tavern. .

Immediately after the Tonia boat completely crossed the bow of the HOLIDAY, Captain Bratton started to place the HOLIDAY in forward gear. At this time Bratton was informed by a member of his crew and a passenger that the boat was about to collide with the WAN–EL. Bratton placed the HOLIDAY in forward gear but was unable to avoid a slight collision in the rear of his boat with the WAN–EL.

Captain Richey on the WAN–EL had kept his boat in neutral since he had first heard the danger signal. While the HOLIDAY was acting in a manner necessary to avoid the Tonia boat, Captain Richey was attempting to discover what the danger actually was. At this time the WAN–EL was surrounded by smaller boats, and Captain Richey was attempting to see if the danger was being caused by one of these smaller boats.

The HOLIDAY and the WAN–EL collided because of the slight forward motion of the WAN–EL caused by its drifting and the current of the Cuyahoga River. In addition, the HOLIDAY had stopped moving down river and for a short period of time was in reverse and actually moving up river. In essence both boats were moving towards each other.

When the two boats collided, Jeffery Robbins had been sitting on a stool in the rear of the WAN–EL playing his guitar. At the point of impact, Robbins fell backwards off the stool and hit his neck on a pole. Thereafter, for the balance of the trip, Robbins only experienced some soreness in his neck. However, for several days thereafter the pain increased and he began to experience some difficulty with his arms and neck. Eventually, Robbins was required to undergo surgery at the Cleveland Clinic to alleviate the pain and discomfort caused by the injury. Since the injury, Robbins has experienced pain and suffering and his prognosis is that he shall continue to experience some pain and discomfort in the future. His condition will require that some career objectives be changed and that Robbins direct his professional goals in different direction.

## CONCLUSIONS OF LAW

The court's admiralty jurisdiction is properly invoked since the substance of the plaintiff's injuries took place on navigable waters in connection with navigation of a vessel. *Fisher v. Danos*, 671 F.2d 904 (5th Cir.1982).

At the time of this incident the applicable rules and standards for navigation on the Great Lakes and their connecting and tributary waters, including the Cuyahoga River, were the Great Lakes Rules of the Road, 33 U.S.C. § 241 *et seq.* These Rules of the Road are the codification of the procedures that vessels on the Cuyahoga River are to use to maintain safe navigation on the river.

■ The primary issues before the court are whether the manner in which the HOLIDAY and the WAN–EL were operated on the evening of August 7, 1982 was negligent and if such negligence proximately caused the injuries sustained by Mr. Robbins. The law is clear that if either or both boats were responsible for the collision, then the responsible vessel(s) would be liable for the injuries sustained by a passenger. *The Herbert L. Pontin*, 50 F.2d 177 (2d Cir.1931).

■ The facts in this action demonstrate that the Tonia boat was being operated in a reckless and negligent manner. This boat was being driven at an unsafe speed considering the numerous boats congregated on the Cuyahoga River and the congestion around the Conrail bridge.

This action by the Tonia boat was a direct violation of Rule 17 of the Great Lakes Rules of the Road which states as follows:

When two steam vessels are meeting end on, or nearly end on, so as to involve risk of collision each shall alter her course to starboard so that each shall pass on the port side of the other.

33 U.S.C. § 282. In addition, when the Tonia boat cut in front of the HOLIDAY an extremely dangerous condition developed and required emergency reactions on the part of the other vessels on the Cuyahoga River. Rule 18 of the Great Lakes Rules of the Road also prohibits such actions by the Tonia boat and provides as follows:

When two steam vessels are crossing so as to involve the risk of collision the vessel which has the other on her own starboard side shall keep out of the way of the other.

33 U.S.C. § 283. Thus, the record clearly demonstrates that Tonia had breached his duty to navigate the Cuyahoga River in a safe and reasonable manner and in accordance with the Great Lakes Rules of the Road.

The evidence is undisputed that the actions taken by Captain Bratton prevented a serious collision with the Tonia boat. Captain Bratton not only avoided the on-coming vessel, but also warned the other vessels on the Cuyahoga River of the existence of a dangerous condition. The responsibilities of the HOLIDAY in this situation was to take whatever action it could to safely avoid the collision with the Tonia vessel. *The Mary C. Elphicke*, 115 Fed. 375 (D.C.Ohio, 1902) The failure of Bratton to act in the manner he did would have caused a certain collision between the Tonia boat and the HOLIDAY and could well have resulted in the sinking of the Tonia boat and possible loss of life. Thus, the court finds that Bratton reacted in a reasonably prudent manner under this emergency situation by taking the necessary actions to avoid the smaller boat.

The plaintiff has argued that Captain Bratton and the HOLIDAY were negligent for placing the boat into reverse to avoid the collision with the Tonia boat. However, the court finds factually that this action was required to avoid the collision with the smaller boat. Therefore, the slight movement up river was not a negligent act to avoid a very dangerous collision with the Tonia boat.

The captain of the WAN–EL was also presented with an emergency situation. When Captain Richey heard the danger signal given by the HOLIDAY, he acted in a reasonable and prudent manner in that he took his boat out of forward gear and placed it in neutral. However, unlike the captain of the HOLIDAY, Captain Richey did not know what the danger actually was. Therefore, Richey had to attempt to discover the dangerous condition in order to safeguard his passengers and his vessel.

When examining the conduct and actions of Captain Richey, the court is unable to find that he acted in any manner that was negligent or unreasonable. Although the WAN–EL continued to move up the river because of the drifting of the boat and the current of the river, Captain Richey had no way of discovering that the HOLIDAY, directly in front of him, had come to a complete stop and would begin to move down the river a slight distance. In this short time period, Captain Richey was looking around the river and to his rear to ascertain the respective status and positions of the numerous smaller boats around him.

In making their respective decisions, Captains Bratton and Richey were placed in emergency situations. The incidents described occurred at night and both boats were surrounded by smaller pleasure craft in the narrow channel of the Cuyahoga River. Under these conditions and in the short time from which these events occurred both men acted in a prudent and reasonable manner. The absence of their actions may have resulted in one or more serious collisions in which lives and vessels may have been lost.

It is clear to the court that the negligent party totally responsible for the slight collision between the HOLIDAY and the WAN–EL was the operator of the Tonia boat, Douglas Tonia. His reckless operation of his vessel was the proximate cause of the injuries to Jeffery Robbins and to the other vessels.

Accordingly, the court enters judgment in favor of each of the remaining defend-

ants to this action and this case is hereby dismissed.

IT IS SO ORDERED.